UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIGHT HOUSE NETWORKS, LLC,

     Plaintiff,

v.                        Case No. 8:14-cv-1237-T-33TBM

PINELLAS COUNTY,

     Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Pinellas County's Motion to Dismiss Complaint for Declaratory Relief (Doc. # 10), filed on June 24, 2014. Plaintiff Bright House Networks, LLC filed a response in opposition to the Motion on July 17, 2014. (Doc. # 16). With leave of Court, Pinellas County filed a reply to Bright House's response on July 31, 2014 (Doc. # 21), and Bright House filed a sur-reply on August 27, 2014 (Doc. # 39). For the reasons stated below, the Motion is granted as this Court finds abstention is proper.

## I.  Background

Bright House brought this declaratory judgment action against Pinellas County on May 27, 2014. (Doc. # 1). In its Complaint, Bright House alleges that it is a party to a Right

of Way Utilization Permit (ROW Permit/Permit) containing an indemnification provision with Pinellas County. (Id. at ¶ 3). The Permit relates to the construction of a Bright House conduit on a bridge in Pinellas County, Florida. (Id. at ¶ 8).

According to Bright House, Pinellas County's bridge contractor "asserted claims against Pinellas County" for breach of contract, common law indemnity, and breach of the Prompt Payment Act relating to construction of the aforementioned bridge. (Id. at ¶ 9). Pinellas County has since "entered into a purported Coblentz agreement"[1] regarding the contractor's claims without consulting Bright House. (Id. at ¶ 10).

Bright House seeks declaratory relief concerning (1) the scope of an indemnification provision in the Permit to which both Bright House and Pinellas County are parties; (2) whether

---

[1] "A Coblentz agreement is a negotiated settlement in which the defendant agrees to a consent judgment and assigns, to the injured party, any cause of action the defendant had against the defendant's insurer. The injured party must thereafter 'prove coverage, wrongful refusal to defend, and that the settlement was reasonable and made in good faith.'" Rodriguez v. Sec. Nat. Ins. Co., 138 So. 3d 520, 521 (Fla. 3d DCA 2014)(quoting Chomat v. N. Ins. Co. of N.Y., 919 So. 2d 535, 537 (Fla. 3d DCA 2006)).

Bright House has a duty to defend Pinellas County in connection with the contractor's claims; and (3) whether Bright House has wrongfully refused to defend Pinellas County pursuant to the Permit. (Id. at ¶ 16).

Pinellas County filed the present Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on June 24, 2014. (Doc. # 10). Bright House filed a response in opposition on July 17, 2014. (Doc. # 16). With leave of Court, Pinellas County filed a reply on July 31, 2014 (Doc. # 21), and Bright House filed a sur-reply on August 27, 2014 (Doc. # 39). This Court has reviewed the parties' submissions and is otherwise fully advised in the premises.

## II. **Legal Standard**

### A. **Rule 12(b)(1) – Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001). Motions to dismiss for lack of subject

3

matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may attack jurisdiction facially or factually. <u>Morrison v. Amway Corp.</u>, 323 F.3d 920, 924 n.5 (11th Cir. 2003).

A facial attack on the complaint requires "the court merely to look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990)(quoting <u>Menchaca v. Chrysler Credit Corp.</u>, 613 F.2d 507, 511 (5th Cir. 1980)). Factual attacks, in comparison, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings. . . ." <u>Scarfo v. Ginsberg</u>, 175 F.3d 957, 960 (11th Cir. 1999)(quoting <u>Lawrence</u>, 919 F.2d at 1529). When the jurisdictional attack is factual, as in the instant case, the presumption of truthfulness afforded to a plaintiff under Fed. R. Civ. P. 12(b)(6) does not attach. <u>Scarfo</u>, 175 F.3d at 960. Because the very power of the Court to hear the case is at issue, the Court is free to weigh evidence outside the four corners of the complaint. <u>Eaton v. Dorchester Dev., Inc.</u>, 692 F.2d 727, 732 (11th Cir. 1982).

**B.    <u>Rule 12(b)(6)- Failure to State a Claim</u>**

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009)(quoting <u>Twombly</u>, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

**III. <u>Discussion</u>**

**A. <u>Fed. R. Civ. P. 12(b)(1)</u>**

Bright House brought this action before this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. # 1). In an effort to establish complete diversity, Bright House alleged:

> Plaintiff [Bright House] is a Delaware limited liability company. . . . [Bright House] is not a citizen of the State of Florida. [Bright House's] principal place of business is New York. None of the members of [Bright House] are citizens of the State of Florida.
>
> Defendant Pinellas County is a political subdivision of the State of Florida.

(<u>Id.</u> at ¶¶ 1-2). However, noting that Bright House failed to properly allege its own citizenship, the Court entered the following Order on May 29, 2014:

> ENDORSED ORDER: Plaintiff attempts to allege diversity of citizenship as the basis for the Court's jurisdiction over this matter. However, because the Complaint fails to properly allege

6

Plaintiff's citizenship, diversity has not been definitively established. In the Complaint, Plaintiff states that Defendant is a political subdivision of the State of Florida and Plaintiff is a Delaware limited liability company with its principal place of business in New York and summarily indicates that none of its members are citizens of Florida. Diversity jurisdiction in a case involving a limited liability company is based on the citizenship of all members of the limited liability company. Therefore, the Court directs Plaintiff to file, on or before June 3, 2014, a supplemental memorandum of law demonstrating that proper grounds for diversity jurisdiction exists. Failure to satisfy the Court that the requirements for diversity jurisdiction exist may result in an Order of dismissal for lack of jurisdiction.

(Doc. # 4)(internal citations omitted); see also Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] party must list the citizenships of all the members of the limited liability company.").

Bright House filed its supplemental memorandum regarding citizenship on June 3, 2014, and stated:

[Bright House] has one member, the Time Warner Entertainment Advance/Newhouse Partnership, a New York general partnership, whose principal place of business is in New York. This partnership consists of two partners: Advance/Newhouse Partnership, a New York General Partnership, whose principal place of business is in New York, and Time Warner Cable Enterprises, LLC, a Delaware limited liability company, whose principal place of business is also

in New York. None of the partners of the
Advance/Newhouse Partnership and none of the
members of Time Warner Cable Enterprises, LLC, are
citizens of Florida.

(Doc. # 5).

On July 18, 2014, this Court held a case management
hearing and discussed with the parties the issue of subject
matter jurisdiction. (Doc. # 17). At the hearing, Bright House
cited to a declaration by Bright House's general counsel,
which is attached to its response in opposition to the Motion
to Dismiss. (See Doc. # 16-4). However, Bright House
acknowledged that the declaration failed to describe or
identify the partners or members of Time Warner Cable
Enterprises, LLC or Advance/New House Partnership.

Bright House represented to the Court that with
additional time to research the issue, it could provide the
necessary jurisdictional information. Therefore, the Court
set August 4, 2014, as the deadline for Bright House to
provide the supplemental information to establish its
citizenship and demonstrate complete diversity. Bright House
failed to file a supplemental memorandum in the time provided
by the Court. Accordingly, on August 6, 2014, this Court
granted the present Motion to Dismiss as Bright House failed

to establish that this Court had subject matter jurisdiction over this action. (Doc. # 22).

Bright House then filed a Motion for Reconsideration on August 11, 2014, requesting that this Court reconsider its August 6, 2014, Order. (Doc. # 23). Specifically, Bright House requested that this Court consider the supplemental memorandum attached to the Motion for Reconsideration, which details its citizenship, and vacate its previous Order dismissing this action. (Id.). Upon due consideration of Bright House's Motion for Reconsideration and Pinellas County's response in opposition thereto (Doc. # 25), the Court found good cause to grant Bright House's Motion for Reconsideration (Doc. # 28). Thus, the issue of whether this Court has subject matter jurisdiction over this action still remains pending before this Court.

In its response to Bright House's Motion for Reconsideration, Pinellas County requested that this Court apply the "total activities" test to determine Bright House's citizenship. (See Doc. # 25). However, Pinellas County failed to provide binding authority demonstrating that the Court was required to engage in such an analysis. Therefore, in its Order granting Bright House's Motion for Reconsideration, the Court provided Pinellas County an opportunity to file a

supplemental memorandum to its reply (Doc. # 21), to address the applicability of the "total activities" test to the instant action (See Doc. # 28). Pinellas County filed a supplemental memorandum on August 22, 2014 (Doc. # 31). Thereafter, with leave of Court, Bright House filed a sur-reply addressing this Court's subject matter jurisdiction. (Doc. # 39).

"The party wishing to assert diversity jurisdiction bears the burden of establishing that diversity exists." Duff v. Beaty, 804 F. Supp. 332, 334 (N.D. Ga. 1992); Jones v. Law Firm of Hill & Ponton, 141 F. Supp. 2d 1349, 1354 (M.D. Fla. 2001)("The party seeking diversity jurisdiction has the burden of establishing jurisdiction by a preponderance of the evidence.").

To sufficiently allege diversity jurisdiction, Bright House must demonstrate complete diversity of citizenship and that the amount in controversy exceeds $75,000.[2] See 28 U.S.C. § 1332. In order to demonstrate complete diversity, Bright House must establish that its citizenship is diverse from the

---

[2] It is undisputed that Bright House has satisfied the amount in controversy requirement. Specifically, "This suit concerns coverage under the indemnification provision in the ROW Permit relating to claims exceeding the jurisdictional amount. The subject claims are in the approximate amount of $694,889." (Doc. # 1 at ¶ 5).

citizenship of Pinellas County. To sufficiently allege the citizenship of a corporation, the state of incorporation as well as the location of the principal place of business must be stated. See 28 U.S.C. § 1332(c)(1). Furthermore, to adequately allege the citizenship of an unincorporated business entity, a party must list the citizenship of all the members of the limited liability company and all the partners of the limited partnership. Rolling Greens MHP, L.P., 374 F.3d at 1022.

In its supplemental memorandum "Bright House has . . . listed each member through its chain of ownership" and four of the entities are corporations. (Doc. # 25 at 1). Bright House has provided the state of incorporation and principal place of business for each entity:

> Bright House Networks, LLC, a Delaware limited liability company, has one member, the Time Warner Entertainment-Advance/Newhouse Partnership, a New York general partnership, whose principal place of business is in New York. This partnership consists of two partners: Advance/Newhouse Partnership, a New York general partnership, whose principal place of business is in New York, and Time Warner Cable Enterprises, LLC, a Delaware limited liability company, whose principal place of business is also in New York.
>
> The general partners of Advance/Newhouse Partnership are A/NPC Holdings, LLC, a Delaware

limited liability company, and A/NP Holdings Sub
LLC, a Delaware limited liability company, each of
whose principal place of business is in New York.
A/NP Holdings Sub LLC is also a wholly owned
subsidiary of A/NPC Holdings LLC.

The members of A/NP Holdings Sub LLC are Newhouse
Cable Holdings LLC, a New York limited liability
company, and Advance Communications Company, LLC,
a New York limited liability company, each of whose
principal place of business is in New York.
Newhouse Cable Holdings LLC is a wholly owned
subsidiary of Newhouse Broadcasting Corporation, a
New York corporation whose principal place of
business is in New York.  Advance Communications,
Company LLC is a wholly owned subsidiary of Newark
Morning Ledger Co., a New Jersey corporation whose
principal place of business is in New Jersey.

The members of Time Warner Cable Enterprises, LLC
are Time Warner Cable, Inc., a Delaware
corporation, and Time Warner NY Cable LLC, a
Delaware limited liability company, each of whose
principal place of business is in New York.  Time
Warner NY Cable LLC is a wholly owned subsidiary of
TW NY Cable Holdings, Inc., a Delaware corporation,
whose principal place of business is also in New
York.

(See Doc. # 23-1).

Pinellas County contends, however, that even considering

the supplemental memorandum, Bright House has still failed to

properly allege that this Court has jurisdiction. (Doc. # 25

at 1; see Doc. # 31). Specifically, Pinellas County posits

that Bright House has failed to support its allegations of

these corporations' principal places of business. (Doc. # 25 at 1)(citing Fritz v. Am. Home Shield Corp., 751 F.2d 1152, 1153 (11th Cir. 1985)("Determining a corporation's principal place of business may require a complex analysis of business relationships among a hierarchy of corporate entities. . . .")). To that end, Pinellas County urges this Court to apply the "total activities" test to determine the principal place of business for each listed corporation. (Doc. # 25 at 2; Doc. # 31 at 1)(citing Tai-Pan, Inc. v. Keith Marine, Inc. et al., No. 95-338-CIV-J-20, 1997 WL 714898, at *2 (M.D. Fla. May 13, 1997)). And, "[i]f the 'total activities' of any of the four corporations in Bright House's chain of ownership would point to a principal place of business in Florida, then Bright House would be considered a citizen of Florida and diversity jurisdiction would not exist." (Doc. # 25 at 2).

In Tai-Pan, the defendants filed a motion to dismiss for lack of subject matter jurisdiction arguing that diversity jurisdiction did not exist as the defendants were Florida residents and a Florida corporation and the plaintiff had its principal place of business in Florida. Tai-Pan, 1997 WL 714898, at *2. The parties agreed that courts in the Eleventh Circuit apply the "total activities" test to determine where a corporation has its principal place of business. Id.

13

> This test combines the "place of activities" test,
> which focuses on production or sales activities,
> and the "nerve center" test, which focuses on the
> situs of the managerial and policy making functions
> of the corporation. Courts will also apply six
> additional factors to help determine a
> corporations's principal place of business: (1) the
> nature of the activity, i.e., whether "active or
> passive," "labor-intensive," or "management
> demanding"; (2) the number of locations where the
> corporation operates; (3) the significance of the
> activity as it relates to the corporate purpose and
> the corporation as a whole; (4) the amount of
> contact the corporation has with the community; (5)
> the location of the corporation's nerve center; and
> (6) whether corporate decisions are confined to the
> nerve center or delegated to other locations.

Id. "After considering the argued facts and the applicable legal principles," the Tai-Pan court concluded that the plaintiff had not met its burden of providing that its principal place of business is outside of Florida, as the plaintiff "all but conceded that [its] day-to-day operations . . . were conducted . . . in the State of Florida". Id. at *4.

However, as previously noted by this Court, Pinellas County has failed to cite any binding authority requiring this Court to engage in a "total activities" analysis and has failed to provide any factual support demonstrating that if this Court were to apply the "total activities" test, the enumerated corporations' principal places of business are

14

within Florida. (Doc. # 28 at 11-12). Thus, the Court declines to engage in such an analysis.

The Court notes that on numerous occasions, Pinellas County has pointed out that in the state court action, Bright House alleged that it was a Florida LLC; however, in this action Bright House alleges that it is not a citizen of Florida. (Doc. # 10 at 9; Doc. # 31 at 2). In an effort to cure this discrepancy in the jurisdictional allegations, Bright House has provided a declaration by attorney Kimberly Sharpe, who drafted the complaint in state court, stating that the state court jurisdictional allegation (i.e., Bright House is a Florida LLC) was made by her without personal knowledge. (Doc. # 16-5). In the declaration, Sharpe further provides that such jurisdictional allegation "was an irrelevant and immaterial allegation made in connection with venue allegations." (Id.). The Court recognizes the discrepancy in the jurisdiction allegations, but finds that Bright House has since adequately retracted the jurisdictional statement contained in the state court complaint.

In its supplemental memorandum regarding citizenship, Bright House provides a detailed breakdown of the citizenship of its members. As articulated by Pinellas County, "Bright

House has . . . listed each member through its chain of ownership and it appears that four of the entities are corporations." (Doc. # 25 at 1). This Court is satisfied that none of these corporations are citizens of Florida; and as a result, complete diversity exists. Thus, the Court finds that Bright House has sufficiently alleged that this Court has diversity jurisdiction over this action.

Now, although the Court finds that it has subject matter jurisdiction over this action, the Court will address whether the Court should abstain from hearing this action in favor of the current state court proceedings.

### B. **Fed. R. Civ. P. 12(b)(6)**

Pinellas County moves the Court to abstain from exercising jurisdiction in the instant declaratory action and to dismiss the case. (See Doc. # 10). The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in relevant part, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Chi. Ins. Co. v. Lammers, No. 6:06-CV-658ORL-28JGG, 2006 WL 5085250 at *3

(M.D. Fla. Oct. 31, 2006)(emphasis in original)(citing 28 U.S.C. § 2201(a)).

The Declaratory Judgment Act confers "on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," allowing a court to determine "whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282, 286-87 (1995). Courts are under "no compulsion" to exercise jurisdiction under the Declaratory Judgment Act. See Brillhart v. Excess Ins. Co. Am., 316 U.S. 491, 494 (1942); Fed. Reserve Bank of Atlanta v. Thomas, 220 F.3d 1235, 1247 (11th Cir. 2000)("A court may exercise its discretion to dismiss a declaratory judgment action in favor of a pending state court proceeding that will resolve the same state law issues.").

The Eleventh Circuit has outlined nine factors that a district court may consider in determining whether to accept or decline jurisdiction over a declaratory judgment action:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;

17

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" — that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

See Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330–31 (11th Cir. 2005). This list of factors is "neither absolute nor exclusive, and no 'one factor is controlling.'" N.H. Ins. Co. v. Hill, No. CIV. A. 11-0414-CG-B, 2012 WL 1598155, at *2 (S.D. Ala. May 7, 2012). "Indeed, the Court has no obligation to consider each and every factor on the list and is free to consider any other factors it deems

relevant or significant." Id. The Eleventh Circuit has "upheld a district court's refusal to assert jurisdiction where the district court had considered only two of the factors[.]" Id.

### 1. **Parallel Action**

The initial inquiry for this Court is whether the present action and the underlying state court action are parallel or only related. As noted above, "the decision of whether to hear a declaratory judgment action in the presence of a parallel state court action is discretionary." State Farm Fire & Cas. Co. v. Knight, No. CIV.A. 09-0783-WS-B, 2010 WL 551262, at *3 (S.D. Ala. Feb. 11, 2010). "[S]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." Id. (quoting Scottsdale Ins. Co. v. Detco Indus., Inc., 426 F.3d 994, 997 (8th Cir. 2005)(citations omitted)); see also Tyrer v. City of S. Beloit, Ill., 456 F.3d 744, 752 (7th Cir. 2006) ("Generally, a suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.") (internal quotation marks omitted). When there is only a related state court action, however, "courts have shown marked reluctance to exercise their discretion to

stay or dismiss the declaratory judgment action." State Farm Fire & Cas. Co., 2010 WL 551262, at *3.

Here, Bright House states that the primary issue in this declaratory action is Bright House's "duty to defend," whereas the primary issue in Pinellas County's counterclaim against Bright House in state court relates only to indemnification. (Doc. # 16 at 1). According to Bright House, in the underlying state court action Pinellas County never made any demand on Bright House to defend the subject claims or requested that Bright House pay the cost of any defense. (Doc. # 10 at 1-2). Instead, Bright House posits that Pinellas County "chose to secretly negotiate a purported Coblentz agreement with its contractor who had asserted claims against Pinellas County under a Dispute Review Board (DRB) agreement (Doc. # 10-2 at 26) and the Prompt Payment Statute." (Doc. # 16 at 2). However, "The duty to defend is not a necessary element of indemnification; the duty to defend is a necessary element to the enforcement of a Coblentz agreement." (Doc. # 16 at 4)(citing Stephens v. Mid-Continent Cas. Comp., 749 F.3d 1318 (11th Cir. 2014)).

According to Bright House, Pinellas County attempted to enforce the Coblentz agreement through a motion in the underlying state court action – "Pinellas County and the

contractor filed a joint motion to approve their settlement agreement and requested entry of a consent judgment against Pinellas County and in favor of the contractor." (Doc. # 16 at 3). Bright House provides that the state court agreed with Bright House that this was improper; Pinellas County should have brought a separate action seeking enforcement of the Coblentz agreement. (Id. at 5). Florida law provides, "where a party wishes to recover under a Coblentz agreement, the party must subsequently 'bring an action' against the insurer and prove certain established elements." (Doc. # 16 at 5)(citing Chomat, 919 So. 2d at 537 ("Where an injured party wishes to recover under a Coblentz agreement, 'the injured party must bring an action against the insurer and prove coverage, wrongful refusal to defend, and that the settlement was reasonable and made in good faith.'"); Mid-Continent Cas. Co., 534 Fed. App'x at 926 (subsequent to the agreement, the party must bring an action)). The record reflects that Pinellas County has not filed such action.

    In a proper action on a Coblentz agreement, the threshold issue is whether the party is an insured at all. (Doc. # 16 at 6)(citing Taylor v. Safeco Ins. Comp., 361 So. 2d 743 (Fla. 1st DCA 1978)); see Sinni v. Scottsdale Ins. Co., 676 F. Supp. 2d 1319, 1324 (M.D. Fla. 2010)("In Florida, a party seeking

to recover under a <u>Coblentz</u> agreement must prove: (1) coverage; (2) a wrongful refusal to defend; and (3) that the settlement was objectively reasonable and made in good faith."); <u>James River Ins. Comp. v. Fortress Sys., LLC</u>, No. 11-60558-CIV, 2012 WL 6154281, at *1 (S.D. Fla. 2012)(coverage is a threshold issue). Bright House argues that the issue of coverage is best brought as a separate action for declaratory relief. (Doc. # 16 at 6). Thus, Bright House claims it filed this separate action to determine the threshold issues, which it submits has been brought for the entirely proper purpose of resolving issues that were not "teed up" in the underlying state court action. (<u>Id.</u>).

Therefore, it is Bright House's position that the state court action has neither the same issues nor the same parties, and therefore is not parallel to the present action. Instead, the narrow issue of "duty to defend" is now presented for the first time in this action.

Conversely, Pinellas County argues that an underlying issue in both matters is the scope of both defense and indemnity under the Permit. (Doc. # 21 at 2). According to Pinellas County, in this action, Bright House is seeking more than a declaration of the existence of a duty to defend. (<u>Id.</u>). Bright House requests "declarations that (a) the

subject claims are not covered by and are not within the scope of the indemnification provision in the ROW Permit; (b) Bright House has no duty to defend Pinellas County in connection with the [subject] [c]laims; and (c) even if Bright house has a duty to defend, Bright House has not wrongfully refused to defend." (Id.; see Doc. # 1 at ¶ 16). Pinellas County argues that the requested declarations are part of the underlying state action. (Id.). To support its position, Pinellas County cites to paragraphs 5 and 15 of Pinellas County's counterclaim against Bright House in the state court action, where Pinellas County alleges:

> Pursuant to the terms of the ROW Permit Plaintiff agreed to indemnify, pay the cost of defense, and save harmless PINELLAS COUNTY from and against payment of all claims arising out of the construction, operation, or maintenance of the underground facilities and resulting from the negligent acts or omissions of the Plaintiff.

(Doc. # 10-2). Further in paragraphs 9 and 19, Pinellas County alleges:

> As a result, Plaintiff owes PINELLAS COUNTY for any sums which may be awarded JOINT VENUTRE against PINELLAS COUNTY, for the amounts expended in defending against the claims of JOINT VENTURE, including any amounts PINELLAS COUNTY is obligated to pay PINELLAS COUNTY's attorney for a reasonable fee for the attorney's services.

* * *

> As a result, Plaintiff owes PINELLAS COUNTY for any
> sums which may be awarded JOHNSON BROS. against
> PINELLAS COUNTY, for the amounts expended in
> defending against the claims of JOHNSON BROS.,
> including any amounts PINELLAS COUNTY is obligated
> to pay PINELLAS COUNTY's attorney for a reasonable
> fee for the attorney's services.

(Id.).

Likewise, Pinellas County argues that Bright House – by

way of its defenses to Pinellas County's counterclaim – has

raised the scope of the Permit's indemnification clause and

its duty to defend in the state action:

> The claims asserted against Pinellas County are not
> within the scope of any indemnity obligation under
> the [Permit].

* * *

> Pinellas County failed to give the Plaintiff proper
> notice of any claim that might be subject to the
> indemnity provision in the [Permit], but instead
> entered into agreements with the Joint Venture,
> without notice to the Plaintiff, that form the
> basis of the cross claims against the County.
> Moreover, to the extent that any such claim is
> within the scope of the indemnity provision in the
> [Permit], *Pinellas County failed to make any demand
> on the Plaintiff to defend the County against such
> claim.*

(Doc. # 10-3)(emphasis added).

Furthermore, Bright House filed a motion for summary judgment in the state action seeking judgment on the scope of the indemnification clause stating, "As a matter of law, the Indemnity Claims on their fact (sic) do not fall within the scope of the indemnification language in the Right of Way Utilization Permit." (Doc. # 10-8).  Pinellas County also filed a motion for summary judgment on the "scope of the ROW Permit and Bright House's duty to defend and indemnify." (Doc. # 21 at 3; see Doc. # 10-9). Therefore, Pinellas County submits that a review of the state court record demonstrates that the issues of coverage under the indemnification clauses of the Permit and Bright House's duty to defend have been raised in the underlying state court action. (Doc. # 21 at 3).

To the extent Bright House argues the need for separate litigation to determine the enforceability of a Coblentz agreement, the Court agrees with Pinellas County, that this argument is misdirected. (See Id.). The enforceability of the Coblentz agreement is not currently before this Court. Although the Complaint references the Coblentz agreement, it does not request any determination from this Court as to the enforceability of the agreement. Instead, Bright House seeks declarations as to the coverage of the Permit's

indemnification clause, Bright House's duty to defend, and whether Bright House wrongfully refused to defend. (See Doc. # 1 at ¶ 16).

The Court recognizes, however, that Bright House's duty to defend is a factor to be considered in determining the enforceability of the Coblentz agreement. But, it is not the complete analysis. If this Court were to find that Bright House did have a duty to defend, the controversy would not be completely resolved. There must also be a determination that the settlement was reasonable and made in good faith, which are declarations Bright House is not seeking in this action. (Doc. # 21 at 4)(citing Chomat, 919 So. 2d at 537 ("Where an injured party wishes to recover under a Coblentz agreement, 'the injured party must bring an action against the insurer and prove coverage, wrongful refusal to defend, and that the settlement was reasonable and made in good faith.'")); see Quintana v. Barad, 528 So. 2d 1300, 1301 n.1 (Fla. 3d DCA 1988)("in order to enforce a consent judgment, 'the injured party must bring an action against the insurer and prove coverage, wrongful refusal to defend, and that the settlement was reasonable and made in good faith.'").

A review of the state court record demonstrates that the state court action and the present action are parallel as the

actions concern "substantially the same parties [who are litigating] substantially the same issues in different forums." See State Farm Fire & Cas. Co., 2010 WL 551262, at *3. Particularly, the issue of whether Bright House has a duty to defend Pinellas County for the damages in accordance with the Permit is raised in both the state court action as well as the present action. Although Bright House contends that Pinellas County "never demanded a defense from [Bright House] and never requested [Bright House] to pay the cost of any defense" (Doc. # 16 at 3), and thus, the duty to defend issue was not "teed up" in state court, this Court disagrees.

The state court record provides that the issue of whether Bright House had a duty to defend, along with the scope of the indemnification provision, have been raised in the state court action; specifically, in Pinellas County's counterclaim against Bright House, and Bright House's defense thereto, and the parties' competing motions for summary judgment as detailed above.

In its response, Bright House provided this Court with a transcript from a state court hearing where it was discussed whether the state court should defer ruling on the pending motions for summary judgment until this Court determined whether it would hear this action. (See Doc. # 16-1). At that

time, Bright House provided: "So it just so happens . . .
that we have some issues that overlap perhaps with respect to
the indemnity." (Doc. # 16 at 95). Thus, Bright House admits
that issues present in the state court action – namely,
indemnification – are present in the instant action as Bright
House seeks, among other things, a declaration from this Court
as to the scope of the Permit's indemnification provision.

Furthermore, the same parties involved in determining
the narrow issues before the Court were present in the state
court action. Bright House argues that in the state court
action, Bright House "was not a party to the cross-claims
between Pinellas County and its contractor." (Doc. # 16 at
5). "The cross-claims between them are not an enforcement
action against [Bright House]. The coverage issues, if any,
between [Bright House] and Pinellas County are not at issue
in the cross-claims." (Id.). However, the state court record
reflects that Bright House has raised the issue of its duty
to defend and the scope of the Permit's indemnification
provisions against Pinellas County, and therefore, the same
parties involved in determining the issues before this Court
were present in the state court action.

Accordingly, the Court concludes that evaluation under
the guidepost factors enumerated in Ameritas is appropriate

28

under the circumstances. See Hartford Fire Ins. Co. v. Donahue, No. 8:14-cv-829-T-30AEP, 2014 WL 3643554, at *3 (M.D. Fla. July 23, 2014)(finding it proper for the Court to analyze whether abstention was appropriate under Ameritas factors).

### 2.  Application of *Ameritas* Factors

Upon review of the Ameritas factors, the Court concludes that the applicable considerations weigh in favor of abstention. See Penn Millers Ins. Co. v. AG-Mart Produce Inc., 260 F. App'x 175, 177 (11th Cir. 2007)(affirming district court's decision to dismiss declaratory judgment action on abstention grounds).

To begin, this Court finds that the state court has a strong interest in the issues presented in the Complaint being decided in the state action. The state court action is being litigated in Florida state court and has been pending for roughly four years. See Fed. Ins. Co. v. Hamptons at Metrowest Condo. Ass'n, Inc., No. 6:13-CV-1087-ORL-37, 2014 WL 299107, at *3 (M.D. Fla. Jan. 28, 2014)("The state court, which presided over the lengthy litigation of the underlying claims, is in a better position to evaluate the factual issues necessary to the indemnity determination."); Lincoln Ben. Life Co. v. Look, No. 2:05-CV-0353-FTM, 2006 WL 3734331 (M.D.

Fla. Dec. 15, 2006)(finding that "Florida state courts undoubtedly have a substantial interest in deciding the issues raised in this lawsuit [as] [t]he underlying state action is being litigated in Florida state court, and any ruling on . . . coverage obligation in this action would have profound and preclusive effects on the state court litigation.").

Furthermore, Florida law governs the substantive issues presented in the instant action – not federal law – which gives Florida a substantial interest in having these issues decided in state court. See Mt. Hawley Ins. Co. v. Park Ave. At Metrowest, Ltd., No. 6:13-CV-556-ORL, 2013 WL 6858946 (M.D. Fla. Dec. 30, 2013)(finding in favor of abstention). Not to mention, Pinellas County, a party in both actions, is a political subdivision of the state of Florida.

Likewise, the state court is in a better position to evaluate the factual and legal issues presented in this action, which are vitally important to an informed resolution of the case. As noted above, in the event Bright House is bringing a separate action regarding enforcement of the Coblentz agreement, a declaration in this case as to Bright House's duty to defend would not resolve the entire controversy. Instead, it would only resolve a portion of the

30

state court action because it would still need to be determined whether the agreement was reasonable and made in good faith.

As demonstrated by Pinellas County, Bright House has actively participated in the state action. This is evident by Bright House raising the scope of the Permit's indemnification clause and its duty to defend in the state court action, specifically in its defenses to Pinellas County's counterclaims (See Doc. # 10-3), and its motion for summary judgment (See Doc. # 10-8; Doc. # 16 at 4). Therefore, because the state court is familiar with the factual issues, parties, and the evidence before it, and because it has been presented with the very issues that are being presented to the Court in the instant case, this Court's exercising jurisdiction would both hinder judicial economy and unnecessarily encroach onto state jurisdiction. See Hartford Fire Ins. Co., 2014 WL 3643554 at *3 (concluding that it was proper for the Court to abstain from exercising jurisdiction).

Moreover, the Court is confident that the state court can provide an alternative remedy that offers the same clarification and declaratory relief as this Court can. In fact, as stated above, the issues of "duty to defend" and

indemnification have been raised by Bright House and Pinellas County in the state court action. The Court notes that the state court held a hearing on several matters, and in regards to whether the state court would proceed on determining "the competing Motions for Summary Judgment on the issue of indemnification and paying the cost of the defense language that is in the [Permit]," the state court pronounced:

> I'm going to let the Federal Court have the first shot at it. And then if they want to send it back or not do it or there's better reason why I should do it, then I'll be glad to let you call it back up, but right now I'm not going to do it.

(Doc. # 16-1 at 98). Thus, the state court "passed the motion pending the Federal Court's action." (Id.). Contrary to Bright House's interpretation, the state court did not indicate, albeit even impliedly, that the issues in the present action are not the same as the issues in the state action. (See Doc. # 16 at 7). Instead, the state court deferred ruling on the motions until this Court determined whether it was more appropriate for the federal court or the state court to make a determination.

Therefore, upon consideration of Ameritas factors, and for the reasons stated above, the Court concludes that the

applicable considerations weigh in favor of abstention.[3] Thus, Pinellas County's Motion is granted. As this Court has determined that abstention is proper under the circumstances, the Court declines to address Pinellas County's arguments that Bright House's Complaint is vague as it fails to make specific reference to the <u>Coblentz</u> agreement and that Bright House failed to add an indispensable party to this action.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Pinellas County's Motion to Dismiss Complaint for Declaratory Relief (Doc. # 10) is **GRANTED** to the extent that this Court abstains from hearing this matter.

(2) The Clerk is directed to **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>25th</u> day of September, 2014.

_Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record

---

[3] Although not addressed individually, the Court has considered all nine <u>Ameritas</u> factors in making its abstention determination.